IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| FLOYD ANTONIO HENRY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO.: 1:18-CV-090 (LAG) (TQL) |
| | : | |
| BENJAMIN FORD, | : | |
| | : | |
| Defendant. | : | |
| | : | |

# ORDER

Before the Court is the Magistrate Judge's Order and Recommendation (O&R) (Doc. 25) and *pro se* Plaintiff Floyd Antonio Henry's Objection (Doc. 28). For the reasons stated herein, the conclusion of the O&R is **ACCEPTED**. Defendant's Motion to Dismiss is **GRANTED**, and Plaintiff's recast Complaint is **DISMISSED without prejudice**.

## PROCEDURAL BACKGROUND

On April 27, 2018, Plaintiff instituted this action pursuant to 42 U.S.C. § 1983, alleging that Defendant Georgia Department of Corrections (GDC) Commissioner Gregory Dozier and Calhoun State Prison Warden Benjamin Ford failed to protect him from being attacked by fellow inmates. (Doc. 1.) Upon the Magistrate Judge's order, Plaintiff filed a recast Complaint on June 28, 2018. (Doc. 6.) On December 13, 2018, the Magistrate Judge issued an O&R in which he recommended that the claims against Defendant Dozier be dismissed but allowed Plaintiff's claims against Defendant Ford to proceed. (Doc. 9 at 7–8.) On January 7, 2019, the Court accepted and adopted the Magistrate Judge's O&R. (Doc. 12.)

On March 18, 2019, Defendant Ford moved to dismiss Plaintiff's recast Complaint, arguing that Plaintiff failed to exhaust his administrative remedies. (Doc. 14.) Plaintiff responded on May 16, 2019, and Defendant Ford replied on May 31, 2019. (Docs. 19, 20.) On November 6, 2019, the Magistrate Judge issued the instant O&R, recommending that Defendant's Motion to Dismiss be granted and Plaintiff's recast Complaint be dismissed.

(Doc. 25 at 7.) Pursuant to 28 U.S.C. § 636(b)(1), the Magistrate Judge's O&R triggered the fourteen-day period in which the parties may file written objections. (*Id.* at 8.) On November 25, 2019, the Magistrate Judge granted Plaintiff an extension for filing objections to the O&R. (Doc. 27.) On December 18, 2019, Plaintiff timely filed his Objection. (Doc. 28.) Pursuant to 28 U.S.C. § 636(b)(1), the Court has reviewed *de novo* those portions of the O&R to which Plaintiff objects and all other findings for clear error. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

## FACTUAL BACKGROUND

### I. Grievance Process

Calhoun State Prison follows the GDC statewide grievance procedures. (Doc. 14-2 at 2.) There are two critical steps in the grievance procedure: (1) the original grievance and (2) the central office appeal. (*Id.* at 3.) In the first step, a prisoner begins the original grievance process by completing, signing, and submitting a grievance form to a grievance counselor. (*Id.* at 14.) Generally, a prisoner "may file a grievance about any condition, policy, procedure, or action or lack thereof that affects the offender personally." (*Id.* at 12.) The grievance form must be submitted no later than ten days from when the prisoner "knew, or should have known, of the facts giving rise to the grievance." (*Id.* at 15.)

Upon receiving the grievance form, the counselor is to give the receipt at the bottom of the form to the prisoner. (*Id.* at 14.) The counselor must then forward the grievance to the grievance coordinator, who screens it, decides if it merits further investigation, and, if so, appoints a staff member to process it. (*Id.* at 15–16.) During the screening process, the grievance coordinator may recommend that the warden reject the grievance without any further investigation if the grievance "[r]aises a non-grievable issue," is untimely, "includes threats, profanity, insults, or racial slurs that are not a part of the [prisoner's] complaint," or constitutes the prisoner's third or more grievance. (*Id.* at 16.) After a grievance is accepted and processed, the grievance coordinator will review the investigation and send the warden an investigation report and recommendation. (*Id.*) The warden is then to issue a decision. (*Id.* at 17.) After the prisoner receives a decision, or after the forty days expire, the prisoner may appeal to the GDC's central office. (*Id.* at 17, 19.)

The second step—the central office appeal—begins when the prisoner appeals the warden's decision on the original grievance. In order to appeal, within seven days of receiving the warden's decision or forty days from the original grievance filing if no decision has been received, the prisoner must obtain an appeal form from the grievance coordinator, then complete, sign, and submit the form to his counselor. (*Id.* at 19.) The counselor is to then give the prisoner the receipt at the bottom of the form. (*Id.*) The counselor must forward the appeal to the grievance coordinator, who shall forward the appeal, the warden's decision, and any supporting documentation to the central office. (*Id.* at 19–20.) The GDC Commissioner must issue a decision within one hundred days of receiving the prisoner's appeal. (*Id.* at 20.) "At any level of the administrative process," if the prisoner does not receive a timely response, "[he] may consider the absence of a response to be a denial at that level." (*Id.* at 18.)

## II.     Plaintiff's Allegations

Plaintiff alleges that on December 16, 2017, he was attacked by a gang-affiliated fellow inmate and struck in the head with a metal chair.[1] (Doc. 1 at 5.) Plaintiff alleges that he was housed in an area previously reserved for members of a faith-based program, "which made it not dangerous for tables and metal chairs to not be bolted to the floor." (Doc. 6 at 2.) He further alleges that, at some point, the population of his housing area "changed to include dangerous inmates," and Defendant Ford failed to secure the unbolted furniture, sufficiently monitor the housing area, or staff the area. (*Id.* ¶¶ 2, 11, 13.) Plaintiff admits that he did not report the incident in a timely manner because he feared "gang retaliation." (Doc. 1 at 5.)

On March 21, 2018, Plaintiff filed Grievance No. 262608 regarding the December 16, 2017 incident. (Doc. 14-2 at 4–5, 25.) Grievance No. 262608 was screened, and the Grievance Counselor recommended it be rejected, as "it was filed outside of the ten day time frame." (*Id.* at 5.) On April 26, 2018, Defendant Ford rejected Grievance No. 262608. (*Id.* at

---

[1]     The facts are primarily taken from Plaintiff's Complaint (Doc. 1) and recast Complaint (Doc. 6) and are accepted as true for purposes of the Motion to Dismiss. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). Facts concerning Plaintiff's use of available administrative remedies are also taken from Plaintiff's Objection (Doc. 28), Plaintiff's Response to the Motion to Dismiss (Doc. 19), and the exhibits attached to Defendant's Motions to Dismiss (Doc. 14-2).

3

27.) Plaintiff appealed the rejection on May 1, 2018. (*Id.*) The rejection was upheld on appeal. (*Id.*)

## DISCUSSION

The Prison Litigation Reform Act (PLRA) requires prisoners challenging their "prison conditions" under § 1983 to exhaust their available administrative remedies before filing suit. 42 U.S.C. § 1997e(a). "The purpose of the PLRA's exhaustion requirement is to 'afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Whatley v. Warden*, 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). "To properly exhaust, a prisoner must comply with his prison grievance procedures." *Id.* (citation and internal quotation marks omitted). But a prisoner is not required to exhaust unavailable remedies. An administrative remedy is unavailable if:

> (1) the administrative procedure "operates as a simple dead end," with "officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the administrative scheme is so opaque and confusing that no reasonable prisoner can use it; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

*Booth v. Allen*, 758 F. App'x 899, 901 (11th Cir. 2019) (quoting *Ross v. Blake*, 136 S. Ct. 1850, 1859–61 (2016)). Plaintiff admits that his grievance was untimely, but he argues that his failure to timely file his grievance should be excused because his tardiness was caused by his fear of gang retaliation. (Doc. 28 at 4.)

The Court applies a two-step process to resolve motions to dismiss for failure to exhaust. *Turner v. Burnside*, 541 F.3d 1077, 1082–83 (11th Cir. 2008).

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed . . . . If the complaint is not subject to dismissal at the first step . . . the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion.

*Id.* at 1082. Because "[f]ailure to exhaust administrative remedies is an affirmative defense," it is Defendant's burden to show that Plaintiff has not properly exhausted his available administrative remedies. *Whatley v. Smith*, 898 F.3d 1072, 1083 (11th Cir. 2018).

Under the applicable grievance procedure, an inmate must submit his grievance form within ten days from when the prisoner "knew, or should have known, of the facts giving rise to the grievance." (Doc. 14-2 at 15.) "In order to satisfy the PLRA's exhaustion requirement, '[p]risoners must timely meet the deadlines or the good cause standard[2] of Georgia's administrative grievance procedures before filing a federal claim.'" *Singleton v. Dep't of Corrs.*, 323 F. App'x 783, 784 (11th Cir. 2009) (alteration in original) (footnote added) (quoting *Johnson v. Meadows*, 418 F.3d 1152, 1159 (11th Cir. 2005)). Plaintiff alleges that he was assaulted on December 16, 2017, but that he did not timely file his grievance. (Doc. 1 at 3, 5.) In his Objection, Plaintiff concedes that he did not timely file his grievance until March 21, 2018. (Doc. 28 at 4–5.) His argument that he did not timely file his grievance because he feared gang retaliation was rejected by the prison officials, and Plaintiff has offered no evidence that the excuse qualified as good cause under Georgia's administrative procedures.

To the extent that Plaintiff argues that the threat of violence from other inmates rendered the administrative process effectively unavailable to him, (Doc. 28 at 4–5), that argument fails. While "a *prison official's* serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance [can] make the administrative remedy 'unavailable,'" *Turner*, 541 F.3d at 1085 (emphasis added), the fear of violence from other inmates does not likewise operate to lift the exhaustion requirement. This is because neither the administrative procedures nor prison officials operated to make relief unavailable to Plaintiff or otherwise prevented Plaintiff from taking advantage of the grievance procedures through "machination, misrepresentation, or intimidation." *Booth*, 758 F. App'x at 901 (quoting *Ross*, 136 S. Ct. at 1859–61). Thus, looking to the factual allegations in Plaintiff's Complaints and his Response, Defendant is entitled to dismissal for failure to exhaust administrative remedies at stage one, and the Court need not reach the second step.

---

[2] While there is no good cause exception to the 42 U.S.C. § 1997e exhaustion requirement, "the Georgia State Prison Inmate Grievance Procedure 'allows the grievance coordinator to waive the time period for filing a grievance if "good cause" is shown.'" *Johnson v. Meadows*, 418 F.3d 1152, 1156 (11th Cir. 2005) (quoting *Harper v. Jenkin*, 179 F.3d 1311, 1312 (11th Cir. 1999)).

5

Plaintiff also argues that there is an exception to the exhaustion requirement "when an inmate is physically or mentally incapacitated." (Doc. 28 at 6 (citing *Days v. Johnson*, 322 F.3d 863 (5th Cir. 2003), *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622 (6th Cir. 2011), and *Hurst v. Hantke*, 634 F.3d 409, 410 (7th Cir. 2011)).) Plaintiff, however, failed to allege any facts establishing that he was physically or mentally incapable of complying with the grievance procedure. Because Plaintiff failed to timely file his grievance and does not establish that his administrative remedies were unavailable, he therefore failed to properly exhaust his administrative remedies. Accordingly, Plaintiff's Objection is overruled.

## CONCLUSION

Upon full review and considerations of the record, the O&R (Doc. 25) is **ACCEPTED**, in-so-far as the Court agrees with the recommendation that the Complaint be dismissed. For the reasons provided above, Plaintiff's Objection (Doc. 28) is **OVERRULED**, and Defendant Ford's Motion to Dismiss (Doc. 14) is **GRANTED.** Accordingly, Plaintiff's recast Complaint (Doc. 6) is **DISMISSED without prejudice**

**SO ORDERED**, this 17th day of January, 2020.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, JUDGE**
**UNITED STATES DISTRICT COURT**